## BANDMAN v. FINN.

(Supreme Court, Appellate Division, First Department. April 7, 1905.)

1. NOVATION—SUBSTITUTION OF NEW CONTRACT—EVIDENCE—SUFFICIENCY.

A real estate agent procured the sale of certain premises to defendant, and defendant, in consideration of the agent's release of his claim against the vendors for commissions, paid him $1,000, and agreed to pay him $8,600 more on sale of the premises. Later the agent placed his claim in the hands of an attorney for settlement, and negotiations were carried on between the attorney and the defendant. Defendant offered to pay $2,500, and $250 counsel fees, for the surrender of the contract, and the delivery of a general release by the agent. The offer was reported to the agent, who said he would accept it; and a day was fixed as the time, and the attorney's office as the place, for closing the transaction, but the transaction was never completed by the payment of the money or surrender of the contract and delivery of the release. At the time of the offer by defendant for surrender of the contract, negotiations had been completed for purchase of the premises by a third person, but the agent had no knowledge thereof. *Held*, that the transaction did not amount to a novation by the substitution of a new contract between the parties.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Novation, § 4.]

2. ACCORD AND SATISFACTION—EVIDENCE—SUFFICIENCY.

Nor did it amount to an accord and satisfaction.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Accord and Satisfaction, §§ 1, 32, 136, 139.]

Action by Albert Bandman against William E. Finn. Verdict was directed, on defendant's motion, for less than plaintiff claimed. 89 N. Y. Supp. 504. Motion by plaintiff for a new trial on exceptions to be heard in the first instance in the Appellate Division. Exceptions sustained, and new trial granted.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Edward M. Shepard, for plaintiff.
Abram I. Elkus, for defendant.

McLAUGHLIN, J. The plaintiff, as the assignee of one Herman Schmidt, brought this action to recover $8,600, a balance alleged to be due for commissions in the sale of certain real estate in the city of New York. The real estate referred to was owned by the Hilton estate, and the fact is not disputed that the sale of it to the defendant was brought about by Schmidt, and by reason thereof he became en-

titled to receive certain commissions. In settlement of these commis-
sions at the time of the conveyance, the defendant executed and deliv-
ered to Schmidt the following agreement:

"New York, May 14, 1902.

"I, William E. Finn, in consideration of H. Schmidt executing a release
of claim for commission to Horace Russell and Edward D. Harris, as Execu-
tors, etc., do hereby agree to pay to said H. Schmidt, One Thousand Dollars.
on passing of title 726–730 Broadway and 31–39 Lafayette Place, which clos-
ing has been set down for May 15th, 1902, and to further pay him the addi-
tional sum of Eighty-six Hundred Dollars on completion of roof of con-
templated building on said premises. In the event of a sale of these prem-
ises, I agree to pay said H. Schmidt said Eighty-six Hundred Dollars on
consummation of said sale."

On receiving this agreement and the $1,000 therein mentioned,
Schmidt executed and delivered to the Hilton estate the release re-
ferred to. Some time in the month of November, 1904, the defendant
entered into negotiations for the sale of the premises referred to, to
one Wanamaker, who, on the 24th of November, signed a contract,
which was delivered to the defendant on the following day, to pur-
chase the premises, and a deed of conveyance was executed and deliv-
ered on or about the 2d of January following. In October, 1903,
Schmidt placed his claim for commissions in the hands of an attorney
—Mr. Levy—with instructions to settle the same. Negotiations were
carried on between the attorney and the defendant until the 23d of
November, when Finn offered to pay $2,500, and $250 counsel fees,
for the surrender of the agreement above quoted, and the delivery of
a general release by Schmidt. This offer was reported by Mr. Levy
to Schmidt, who said he would accept it; and thereupon November
25th, at 3 o'clock in the afternoon, was fixed as the time, and Levy's
office as the place, for closing the transaction. On the day appointed,
shortly before 3 o'clock, Schmidt went to his attorney's office, and he
was then asked if he had the original contract. He said he had not,
but would go and get it. He then left the office, and did not return.
Shortly thereafter the defendant appeared, and produced two checks,
which were not certified—one for $2,500, and one for $250—and said,
in substance, that he would deliver the same, but, when he did so, he
wanted the contract referred to and a general release. The attorney
did not have the contract, nor did he accept the checks or deliver a
release. After waiting a short time, the defendant left, and this con-
stitutes all that was done with reference to a settlement of the claim
for commissions.

At the conclusion of the trial, the foregoing facts having been made
to appear, plaintiff moved for the direction of a verdict for $8,600,
and defendant moved for the direction of a verdict for $2,500. Plain-
tiff's motion was denied, and defendant's motion granted, and the ex-
ceptions taken by plaintiff ordered to be heard in the first instance at
the Appellate Division.

The trial court, as appears from the opinion delivered, held that the
transaction did not amount to an accord and satisfaction, and in this
he was undoubtedly correct. At the time defendant offered his check
for $2,500 in satisfaction of Schmidt's claim, negotiations with Wana-
maker had so far progressed that a sale of the real estate to him was

practically assured, and, when they ripened into a conveyance, Schmidt was entitled, under the agreement, to $8,600; and in negotiating for a settlement the defendant could not keep Schmidt in ignorance of the fact that there then had been or was about to be executed by Wanamaker a contract to purchase. Honesty and fair dealing required that he should make this disclosure. Otherwise the parties were not dealing on an even plane. Besides, the check was not delivered, and the negotiations never resulted in a settlement of the claim. But the court held that, while the facts enumerated did not amount to an accord and satisfaction, they did amount to a novation, and in this I think he erred. A novation is the substitution of a new contract for an old one, which is thereby extinguished. Whatever rights there may be to the parties to the contract are merged in the new, which, in and of itself, destroys the old, and thereafter the remedy of either party in case of a breach is upon the new contract, according to its terms. When the facts here are considered, it at once becomes apparent there was not a novation. The negotiations which were carried on between the defendant and Schmidt were to settle and compromise Schmidt's claim for $8,600. This claim was placed by Schmidt in his attorney's hands to enforce, and, through negotiations commenced by him, the terms of a proposed settlement were agreed upon. The proposed settlement was to be a written release of the claim asserted by Schmidt, his surrender of the original contract, and the payment of $2,500 in addition to $250 counsel fee. There is not a suggestion in any of the negotiations that there was to be a new contract, or that anything was to be done except the satisfaction of the old one— a mere composition and settlement of an asserted claim, and nothing else. The negotiations were oral, and there was nothing in the language used by any of the parties which would justify even an inference that a new contract was to be made, or anything done but the extinguishment of the claim made under the old agreement. Defendant was willing to pay the amount named, on receiving from Schmidt a general release and a surrender by him of the old contract. Until that was done the old contract remained in force. It never was done.

The case of McIntosh v. Miner, 37 App. Div. 483, 55 N. Y. Supp. 1074, cited by the defendant's counsel, is not in point. In that case, when the new agreement was made, the plaintiff did not have a money claim, or any claim which could then be enforced. Plaintiff was an actor. He had an agreement with the defendant to perform services in the future for the compensation of $100 a week, to be paid as the services were performed. Before any services had been rendered or any money had become due the actor proposed the substitution of a new agreement for the old one. He asked that he be released from his future obligations to act, and promised to release the defendants from their obligation if they would pay him $400. Defendants accepted the proposition, and promised to pay the $400. Subsequently— the time having arrived for him to act under the original agreement— plaintiff insisted that that agreement was in force, and the sole question presented was whether the abrogation had taken effect at the time defendants promised to pay the $400. It was held that the new agree-

ment was complete when the parties mutually agreed the employment should cease, and that that agreement took the place of the old one. In Hartwig v. American Malting Co., 74 App. Div. 140, 77 N. Y. Supp. 533, the decision was put upon the ground that a distinct agreement to pay a definite sum in discharge of the old contract had been made. Judge Patterson, delivering the opinion, said, "The plaintiffs discharged the defendant from the contract in consideration of its promise to pay them a liquidated sum." In this case there was no satisfaction or discharge of the old contract. No money was paid. The contract was not surrendered, nor was a release given. It is undoubtedly true that the defendant was eager to carry out the agreement. Well he might have been. His contract obligated him to pay Schmidt, when the conveyance was made, $8,600. He knew at the time he went. to the office of Schmidt's attorney that Wanamaker had executed or was about to execute a contract to purchase, and that, as soon as the title had been passed, a conveyance would be made, and thereupon, if he kept his agreement, he would have to pay Schmidt $8,600.

I am of the opinion that the exceptions should be sustained, the verdict set aside, and a new trial ordered, with costs to plaintiff to abide event. All concur.